IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-0268-CMA-NYW

UNITED STATES OF AMERICA, ex rel.,
JOHN SIMPSON,

    Plaintiff,

v.

LEPRINO FOODS DAIRY PRODUCTS COMPANY,

    Defendant.

## BRIEF OF PLAINTIFF-RELATOR JOHN SIMPSON OPPOSING MOTION TO DISMISS

The complaint details a straightforward False Claims Act (FCA) violation: for more than a decade, on government contracts worth hundreds of million dollars, Leprino falsely claimed to be selling "mozzarella" cheese. The claims were false because, contrary to government regulations setting mozzarella "standards of identity," Leprino knowingly added significant amounts of sodium hexametaphosphate ("HEX")—which is *not* one of the listed "safe and suitable ingredients" for mozzarella, 21 C.F.R. 133.155(b)—directly to the cheese with the design and effect of fundamentally altering the cheese's characteristics.

Leprino falsely claimed it was selling "mozzarella" (and lite "mozzarella") cheese when in fact it was not. It was selling some type of cheese—perhaps "pizza" or other "processed" cheese—but not the mozzarella it was claiming and being paid to sell. An FCA claim is stated because Leprino knowingly made materially false claims for hundreds of millions of dollars.

1

## Background

The government contracts for mozzarella cheese were issued through U.S. Department of Agriculture components (collectively "USDA") for federal nutrition programs (such as the school lunch program) administered by USDA and other federal agencies. Leprino had to certify that its mozzarella complied with USDA's commodity specifications, including the "standard of identity" regulation issued by the Food and Drug Administration ("FDA"). Doc. 1, ¶¶ 8-15, 34-50.

The FDA standards for mozzarella, as any Italian food preparer (or foodie) would appreciate, are strict. There are limited approved ingredients; HEX is not one of them. Doc. 1, ¶¶ 19-22, 61-69; *see, e.g.,* 21 C.F.R. 133.155(b) (listing dairy ingredients, clotting enzymes, and optional other ingredients for mozzarella cheese).

Leprino cannot dispute that it knew the HEX deliberately added into its cheese was not an approved ingredient for mozzarella. Instead, it invokes a narrow FDA exception codified at 21 C.F.R. 130.8(a). That section states that "a food does not conform to the definition and standard of identity therefor … [i]f it contains an ingredient for which no provision is made in such definition and standard, unless such ingredient is an incidental additive introduced at a nonfunctional and insignificant level as a result of its deliberate and purposeful addition to another ingredient permitted by the terms of the applicable standard…." *Id.* Leprino's theory is that the HEX was conforming because it was added to salt, a permitted optional ingredient.

The "incidental additive" exception requires two conditions. First, it must be an "addition to another [permitted] ingredient." *Id.* Second, its introduction must be at a "nonfunctional and insignificant level." *Id.* Here, Leprino violated both requirements, adding significant levels of HEX directly to the cheese with the design and effect of changing its functional properties.

Leprino knew these clear requirements not only from the face of the regulations but also because the FDA directly told it so in 2004. The complaint quotes and attaches a USDA letter to Leprino that Leprino itself provided USDA in 2015. In pertinent part, that 2004 FDA letter, addressing the "narrow provisions" of section 130.8, took pains to "reiterate" that:

> These provisions do not permit the direct addition of [HEX] to mozzarella cheese. … [Y]our current submission refers to a direct addition of [HEX] to the cheese. Therefore we advise you that Leprino's use of [HEX] in the specific manner described in your current submission is not consistent with the provisions of 21 C.F.R. 133.155 and 130.8.

Doc. 1-7 at 2.

That warning sounded in 2004. Almost a decade later, Relator John Simpson, a USDA field inspector, discovered that Leprino's Greeley plant was directly lacing its molten cheese with substantial quantities of HEX; indeed, his November 2013 inspection revealed that Leprino had two silos storing HEX as compared to seven committed to milk storage. Another inspector reported similar findings in 2014 inspections of two other Leprino plants (in Fort Morgan, Colorado, and in California). Doc. 1, ¶¶ 84-96.

These findings triggered USDA action. First, Simpson's supervisor conferred with FDA, which stated in 2015 that Leprino was violating the regulations, as detailed in FDA's 2004 letter to Leprino, by continuing to add HEX "directly to the mozzarella cheese and in amounts that likely result in a technical or functional effect in the finished product." FDA further told USDA that Leprino previously had "assured us that they would change their process to incorporate [HEX] into salt, a permitted ingredient, prior to the addition of the salt to the mozzarella cheese." Doc. 1, ¶¶ 97-98.

USDA then sent Leprino the April 7, 2015 letter, quoted in and attached to the complaint. Doc. 1, ¶¶ 99-102. That letter related "observations" of "our inspectors" (not named but including Simpson) revealing "the direct addition of [HEX] to the curd mass." Doc. 1-7 at 2. It further stated that Leprino's explanation in a 2014 call discussing this issue—that "salt was being added to the [HEX]"—did not "support[] the direction provided by the FDA." *Id.* The letter offered Leprino three options: "1) discontinuing the labeling of cheese as Mozzarella; 2) discontinuing the use of [HEX] as currently used; or 3) detailing and implementing a method of [HEX] addition that would demonstrate compliance to FDA's 2004 letter." *Id.*

Importantly, Leprino's own advocacy to the federal government confirms that its adding significant amounts of HEX directly to the cheese was not just a minor manufacturing issue but was designed to alter the cheese's functional characteristics. As recounted in the complaint, Leprino told FDA before the 2004 letter that an "alternative 'dry salting' process … produced an inferior product" that "adversely affected the melting properties of Leprino's cheese." That was why Leprino unsuccessfully "requested permission to add [HEX] directly to its molten cheese in order to remedy the adverse effects of the dry salting process." Doc. 1, ¶¶ 74-75.

## Argument

There is no dispute as to the statutory elements of an FCA claim. Leprino challenges the complaint as deficient on the statutory elements of "falsity," "knowledge" and "materiality." Doc. 28 at 8-9; *see* 18 U.S.C. § 3729(a)(1) (liability of one who "knowingly presents" government with "a false or fraudulent claim for payment or approval"); *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016) ("Under the Act, the misrepresentation must be material to the other party's course of action.").

4

    A.    <u>The complaint properly pleads, with particularity, all FCA elements.</u>

        1.    <u>Leprino's claims that it was selling mozzarella were false because its unapproved additive made the cheese something other than mozzarella.</u>

This is a "paradigmatic [FCA] case" where "a claim is false because it involves an incorrect description of goods or services provided…." *U.S. ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1031 (D.C. Cir. 2017) (quoting *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010), which in turn quoted *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001)). It is what the Tenth Circuit has called "a run-of-the-mill 'factually false case, [where] proving falsehood is relatively straightforward." *U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (similarly citing *Mikes*, 274 F.3d at 697). While courts have struggled with more esoteric "legally false certification" claims, *id.*, including "implied certification" claims now allowed by *Escobar*, all courts agree an actionable false claim is stated based on "palming off one product as another." *U.S. ex rel. Nargol v. DePuy Orthopedics, Inc.*, ___ F.3d ___, 2017 WL 3167622, *5 (1st Cir. July 26, 2017) (discussing *U.S. ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 905 n.8 (9th Cir. 2017).

The complaint alleges that Leprino's claims and certifications that it was selling mozzarella cheese (with a "C17" government code) were false because an impermissible ingredient (HEX) changed the very "identity" of the cheese. Doc. 1, ¶¶ 34-72. Leprino cannot dispute these allegations on a motion to dismiss, nor does its motion seriously try to do so.

Leprino weakly tries to overcome the falsity allegations by seeking safe harbor in a narrow exception to the FDA's "standard of identity" regulations. Doc. 28 at 11 (citing 21 C.F.R. 130.8(a)). Arguably, that is a factual defense that need not be negated in a complaint. *See Ghailani v. Sessions*, 859 F.3d 1295, 1305-06 (10th Cir. 2017). Regardless, it lacks merit.

The complaint alleges two reasons why this "incidental additive" regulation does not help, but hurts, Leprino. First, contrary to the regulation, which is limited to some "addition to another [permitted] ingredient," Leprino was adding HEX directly to the cheese rather than to another ingredient such as salt that then was added to the cheese. Doc. 1, ¶¶ 77-81 (citing 21 C.F.R. 130.8(a)). Second, Leprino added HEX at significant levels for the very purpose of changing the cheese's characteristics, which is contrary to the regulation limited to an "incidental additive introduced at a nonfunctional and insignificant level." *Id.*

Leprino's motion never comes to grips with these allegations taking this case well outside section 130.8. It ignores the first requirement (disallowing an impermissible ingredient added directly to the cheese), while arguing that the complaint misapplies the second requirement, which purportedly is "about 'level' in the *finished* cheese, not about how much is used in processing." Doc. 28 at 11 (emphasis by Antero). But the more an impermissible ingredient is used in processing, the more likely it is to affect the finished product. Regardless, that debate is pointless, as the complaint alleges that Leprino avowedly was applying HEX directly into the cheese precisely so it could alter the characteristics of the finished product. *See* Doc. 1, ¶¶ 74-75.

    2. <u>Leprino knew—from clear regulations and direct FDA warnings—that it was not selling mozzarella</u>.

Leprino's challenge to the allegations that it knew of the falsity fare no better. The mozzarella "standard of identity" regulations are clear, and clearly applicable to a sophisticated seller such as Leprino; this is hardly, as Leprino would portray it, a case of "scientific" uncertainty where "reasonable minds may differ." Doc. 28 at 8. That portrayal is eviscerated by the FDA's 2004 letter that Leprino could not add HEX directly to cheese and still call it mozzarella. *See* Doc. 1, ¶¶ 73-81 & Doc. 1-7 (USDA's 2015 letter quoting this 2004 FDA letter).

Leprino knowingly continued its conduct for more than a decade after being told by FDA that it was producing cheese not meeting the standard of identity for mozzarella. And, in doing so, it misrepresented to USDA inspectors that the "FDA had approved the addition of [HEX] directly to the molten cheese," Doc. 1, ¶ 82—when in fact the FDA had told Leprino the exact opposite. *See* Doc. 1-7.

        3.      <u>The falsity was material because it affected the product's very identity</u>.

Leprino's motion discusses the FCA's materiality requirement, Doc. 28 at 9, but then offers no argument for why false statements going to the core of the product's identity could be anything but material. To the extent this sufficiently raises a materiality challenge, it necessarily fails.

Tenth Circuit law now is clear that "materiality does not require a plaintiff to show conclusively that, were it aware of the falsity, the government would not have paid. Rather, it requires only a showing that the government *may* not have paid." *U.S. ex rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1169 (10th Cir. 2016) (emphasis in original; quoting *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1170 (10th Cir. 2010)). The Supreme Court's *Escobar* decision listed several factors bearing on materiality, beginning with this: "the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." 136 S. Ct. at 2003. Leprino's motion does not attempt to apply these materiality factors here, perhaps because the best it could do would be to raise disputed facts that could not be resolved on a motion to dismiss (or even on summary judgment). *See U.S. ex rel. Scutellaro v. Capitol Supply, Inc.*, No. 10-1094, 2017 WL 1422364, **18-21 (D.D.C. Apr. 19, 2017).

Unlike in many FCA cases, where materiality must be gleaned from implied certifications under complex regulations, the statute makes clear the materiality of food mislabeling. Under the Federal Food, Drug and Cosmetic Act of 1938, a food product is "misbranded" if (among other things) "it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by [FDA] regulations … unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard….". 21 U.S.C. 343(g). As the Supreme Court long ago explained, "[t]he statutory purpose to fix a definition of identity of an article of food sold under its common or usual name would be defeated if producers were free to add ingredients, however wholesome, which are not within the definition." *Fed. Security Adm'r v. Quaker Oats Co.*, 318 U.S. 218, 232 (1943). This is no less true today. *See Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 621-22 (4th Cir. 2015) (standard of identity is "important" and "fundamentally … focuses on the contents of food").

The standard of identity is "important" to ensure "consumers 'will get what they may reasonably expect to receive.'" *Id.* (quoting *Quaker Oats*, 318 U.S. at 232). Materiality is further confirmed by USDA commodity specifications directing that mozzarella cheese "shall comply" with FDA regulations on cheese. *See* Doc. 1, ¶¶ 45-50, 61 & Doc. 1-3 at 10. To obtain the contracts, Leprino was required to answer "Bid Certification Questions" certifying that its mozzarella cheese "meets the commodity specifications applicable to this Solicitation," Doc. 1-2 at 4, Question 13; USDA commodity specifications make clear that these certifications are a condition of payment that can lead to rejecting the cheese or reducing its price. *See* Doc. 1, ¶¶ 14-15. Materiality is clear, and not subject to serious challenge in this motion to dismiss, as Leprino did not deliver what it promised and was paid to deliver: mozzarella cheese.

    B. <u>Leprino's argument that the complaint does not plead "concealment" with particularity fails because concealment is not an element of this FCA claim</u>.

These FCA claims are brought under 31 U.S.C. § 3729(a)(1)(A)-(B), *see* Doc. 1, ¶¶ 112-13, and Leprino correctly states the elements of such claims as "falsity, knowledge, and materiality." Doc. 28 at 7-8. Nonetheless, much of its motion obsesses on allegations—involving decade-long "concealment" of the knowingly and materially false statements—that are not even an FCA element. Because the complaint plausibly pleads all FCA elements with particularity, it cannot be dismissed because of purported deficiencies in allegations regarding concealment.

Concealment is not an element in FCA actions like this involving false claims for government funds, but only in "reverse" FCA claims seeking to avoid government obligations. *U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 500 & nn. 6-7 (3d Cir. 2017) (distinguishing 31 U.S.C. § 3729(a)(1)(A) from § (a)(1)(g)); *see U.S. ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1194-95 (10th Cir. 2006) (current section 3729(a)(1)(g) involving concealment of obligation "is described as a 'reverse false claims' provision because the financial obligation that is the subject of the fraud flows in the opposite of the usual direction") (some internal quotations omitted). Leprino's legally unavailing efforts to deny concealment only confirm that the complaint properly pleaded all FCA elements. The USDA memo attached by Leprino shows that, when asked in 2014, Leprino plant personnel admitted that "liquid" HEX (with "a small amount of salt added to" the HEX) was being allowed "to flow onto the molten cheese." Doc. 28-1. That, of course, violates the FDA's directive a decade earlier. *See* Doc. 1-7 at 2.

    C. <u>The limitations argument is not a ground for dismissal</u>.

Leprino concedes the case was timely as to false claims after February 2, 2010, but raises a limitations defense for prior claims. Doc. 28 at 15 (citing 31 U.S.C. § 3731(b)(1); *U.S. ex rel.*

*Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 722-26 (10th Cir. 2006)). While the 2-1 *Sikkenga* decision supports Leprino's position, this is an issue that has divided the Tenth Circuit and courts nationally. *See U.S. ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 34-37 (D.D.C. 2014), *clarified on denial of recons.*, 2016 WL 3197550 (D.D.C. 2016). The limitations defense need not be decided now, as (1) it will not result in dismissal; (2) complaints generally need not negate affirmative defenses, *see Ghailani*, 859 F.3d at 1305-06; and (3) the current legal uncertainty on this issue may be clarified by the time the issue really matters.

## Conclusion

The motion to dismiss should be denied.

Respectfully submitted,

Michael S. Porter
The Law Firm of Michael S. Porter
4465 Kipling Street
Wheat Ridge, CO 80033-2810
(303) 940-8370
porterlaw@comcast.net

Mitch Kreindler
Kreindler & Associates
9219 Katy Freeway, Suite 206
Houston, TX 77024
(713) 647-8888
mkreindler@blowthewhistle.com

Paul S. Enockson
Enockson Law LLC
2579 West Main Street, Suite 201
Littleton, CO 80120
(303) 999-0134
paul@enocksonlaw.com

By: _____/s/ Sean Connelly_____
Sean Connelly

Zonies Law LLC
1900 Wazee Street, Suite 203
Denver, CO 80202
(303) 302-7849
sconnelly@zonieslaw.com

*Attorneys for Relator John Simpson*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing Brief was filed and served on this 10th day of August, 2017, using the CM/ECF system, which will serve as notification of such filings on counsel for all parties.

*s/ Sean Connelly*
Sean Connelly
