## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-0268-CMA-NYW

UNITED STATES OF AMERICA,
ex rel. JOHN SIMPSON,

      Plaintiff,

v.

LEPRINO FOODS DAIRY PRODUCTS COMPANY, a Colorado Corporation;

      Defendant.

---

## [PROPOSED] SCHEDULING ORDER

---

## 1.   DATE OF CONFERENCE
## AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

A Scheduling Conference was held on September 12, 2017, at 10:30 a.m. in

Courtroom C-204, Byron G. Rogers United States Courthouse.  Counsel for the parties

are as follows:

Counsel for Relator/Plaintiff John Simpson:

Michael S. Porter
The Law Firm of Michael S. Porter
4465 Kipling Street
Wheat Ridge, CO 80033-2810
(303) 940-8370
porterlaw@comcast.net

Sean Connelly
Zonies Law LLC
1900 Wazee Street, Suite 203
Denver, CO 80202
(720) 464-5300
sconnelly@zonieslaw.com

Mitch Kreindler
Kreindler & Associates
9219 Katy Freeway, Suite 206
Houston, TX 77024
(713) 647-8888

Paul S. Enockson
Enockson Law LLC
2579 West Main Street, Suite 201
Littleton, CO  80120
(303) 999-0134

mkreindler@blowthewhistle.com          paul@encoksonlaw.com

Colette G. Matzzie                              Taeva Shefler
Phillips & Cohen LLP                          Phillips & Cohen LLP
2000 Massachusetts Avenue, NW       100 The Embarcadero
Washington, DC 20036                       Suite 300
(202) 833-4567                                  San Francisco, CA 94105
cmatzzie@phillipsandcohen.com          tshefler@pscf.com

Counsel for Defendant Leprino Foods Dairy Products Company:

Cliff Stricklin
Michael J. Hofmann
Laura S. Perlov
Bryan Cave LLP
1700 Lincoln Street, Suite 4100
Denver, CO  80203-4541
(303) 861-1700
cliff.striklin@bryancave.com
michael.hofmann@bryancave.com
laura.perlov@bryancave.com

David W. Ogden
Carl J. Nichols
Christopher E. Babbitt
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6681
david.ogden@wilmerhale.com
carl.nichols@wilmerhale.com
christopher.babbitt@wilmerhale.com

## 2.  STATEMENT OF JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 31

U.S.C. § 3732, the last of which confers jurisdiction on this Court for actions brought

pursuant to 31 U.S.C. §§ 3729 and 3730. In the event that the False Claims Act's public

disclosure bar (31 U.S.C. § 3730(e)(4)) becomes an issue in this litigation, Leprino

reserves its right to bring any jurisdictional consequences to the Court's attention at that

time.  Plaintiff/Relator does not agree that 31 U.S.C. § 3730(e)(4) raises jurisdictional issues.

### 3.  STATEMENT OF CLAIMS AND DEFENSES

Plaintiff/Relator:  John Simpson, an employee of the United States Department of Agriculture, alleges that defendant, Leprino Foods Dairy Products Company ("Leprino") supplied the government with millions of pounds of a cheese product that Leprino falsely represented was mozzarella. At all times material hereto, Leprino received large government contracts that required it to deliver mozzarella cheese for the benefit of third-party programs involving, among other things, school lunches and food for the elderly. For each government contract on which Leprino bid and was awarded, Leprino was required to represent that the cheese it was selling met the definition of and standard of identity for mozzarella, as defined by the Federal Food and Drug Administration ("FDA"). 21 C.F.R. § 133.155 through 133.158. Leprino falsely represented that it was selling "mozzarella" cheese to the government when, in fact, Leprino knew that the cheese it was selling did not qualify as mozzarella. Simpson seeks relief on behalf of the United States pursuant to a single claim for relief under the federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)-(B).

Leprino's representations that it was selling mozzarella cheese were false because Leprino knowingly added an unapproved ingredient—sodium hexametaphosphate ("HEX")—directly to the cheese, at functional and significant levels, with the design and effect of fundamentally affecting the cheese's characteristics. Pursuant to applicable regulations, only six "safe and suitable ingredients may be used" in the production of

3

mozzarella cheese: (1) dairy ingredients; (2) clotting enzymes; (3) vinegar; (4) coloring; (5) salt and (6) antimycotics. 21 C.F.R. § 133.155.

Leprino claims, in part, that HEX qualified as a permissible "incidental additive" under 21 C.F.R. § 130.8. But that particular regulation prevents a food from conforming to the definition and standard of identity unless the additive is, among other requirements, "introduced at a nonfunctional and insignificant level as a result of its deliberate and purposeful addition to another ingredient permitted by the terms of the standard." Here, the evidence will establish that Leprino flaunted the regulations by directly adding HEX to the subject cheese at functional and significant levels. Leprino contends that it is undisputed that it added HEX to salt before adding it to the cheese but that is an issue in dispute. Leprino also contends that Relator's interpretation of federal law has been rejected by federal agencies but Relator's position is consistent with the interpretation of the regulations by federal agencies.

As such, for over a decade, Leprino knowingly sold the government something other than mozzarella cheese because the cheese it supplied did not meet the FDA's definition and standard of identity regulations. Those federal requirements are material to payment. Leprino is therefore liable under the federal False Claims Act for falsely and knowingly representing to the government that it was selling mozzarella cheese to the government when, in fact, it was not.

Leprino:

There's more than one way to make mozzarella, under federal law. Leprino uses an "alternate make" method which incorporates "dry salting" (instead of the traditional

4

brine method) and a processing aid known as sodium hexametaphosphate ("SH"). Federal law allows food makers to use processing aids for their "technical and functional effect in the processing," so long as the processing aid is incorporated with another ingredient during processing, and is present in the finished food at an "insignificant and nonfunctional" level. Those requirements were all met in this case.

During the relevant time period for this litigation, Leprino has incorporated SH into salt (which is a permitted ingredient) before adding the SH/salt to in-process cheese. SH's has a "technical and functional" effect in the processing: it counteracts the tendency of the dry-salting process to cause the loss of cheese serum and fat during processing. By counteracting that tendency, the finished cheese has levels of cheese serum and fat in line with mozzarella cheese made with the traditional brining method. Because the levels of cheese serum and fat are the same as traditionally-made mozzarella, Leprino's mozzarella has melt characteristics found in mozzarella cheese made the traditional way.

The relator has not—and cannot—identify any regulatory violation in this case. First, though the relator's response brief argues that SH cannot be "directly added" to in-process cheese, he cites no regulation that forbids the "direct addition" of SH to cheese. What the regulations actually forbid is adding SH to cheese without first combining SH into a permitted ingredient. But here, the undisputed facts are that Leprino has combined SH with salt, and accordingly is allowed to add the SH/salt to the in-process cheese.

Second, the relator argues that SH is present in Leprino's finished cheese at a "significant and functional level," which is forbidden by a federal regulation. But the relator never identifies any "level" of SH in the finished cheese and never explains why that

unidentified "level" is "significant." The relator does argue that SH is "functional"—because cheese made with the dry-salting process, but without SH, would not melt like mozzarella made the traditional way—but the relator is confusing SH's technical effect during processing for an "function" in the finished product. As the FDA recognized in 2004, SH prevents the loss of "cheese serum and fat" during processing, and those items, retained as a result in the processing, cause Leprino's mozzarella to melt like mozzarella made the traditional way. Federal law expressly allows a processing aid to have a technical or functional effect in the processing. And the relator never identifies *any* function that SH serves in the finished cheese, as distinct from the function that it serves in the processing. Moreover, the relator cannot complain that using a processing aid results in a cheese that has the same "physical and chemical characteristics" as cheese made the traditional way—the FDA's alternate make regulations *require* that result.

The relator's interpretations of the regulations are incorrect, not supported by any guidance, and rejected by three federal agencies, including his employer. His complaint is implausible. Though the relator claims that Leprino "knew" that it was not selling mozzarella cheese, that claim depends entirely on the relator's peculiar, and incorrect, understanding of the regulations. Moreover, the relator cannot deny that the federal government has routinely inspected Leprino's plants, has observed Leprino's alternate-make method, has communicated with Leprino about that method, has repeatedly approved Leprino's process, and has continuously bought Leprino's cheese—even after the relator complained to the government. And though the relator's complaint alleged that

Leprino "concealed" facts and legal conclusions from the government, the relator abandoned that position in his motion to dismiss briefing. Accordingly, the relator cannot prove any element of a FCA case: not falsity, not materiality, and not scienter.  And the relator has effectively conceded that claims before February 3, 2010 are time-barred.

### 4.  UNDISPUTED FACTS

The following facts are undisputed:

1.     Mozzarella cheese sold to the government must meet the United States Department of Agriculture ("USDA") commodity specifications:  21 C.F.R. § 133.155 through 21 C.F.R. § 133.158; DM0Z4 Mozzarella Cheese: For Use In Domestic Programs" and "Commercial Item Description:  Cheese, Mozzarella, Lite."

2.     Under USDA's commodity specifications, dairy ingredients used in the manufacture of mozzarella cheese sold to the government must originate from dairy plants that have been surveyed by USDA's Agricultural Marketing Service, Dairy Grading Branch, Dairy Programs and receive an approved status for manufacture and sale of mozzarella cheese as designated by USDA's C17 plant code.

3.     Sodium hexametaphosphate is not one of the ingredients listed in the definition and standard of identity for mozzarella or lite mozzarella cheese.

### 5.  COMPUTATION OF DAMAGES

Plaintiff/Relator's Statement:  The Plaintiff/Relator claims damages in this case based on government contracts that were entered into by Defendant, which contracts required Defendant to supply mozzarella or lite mozzarella cheese that met the "standards of identity" for these cheese products. For example, from 2004 to 2015,

Defendant entered into contracts worth over $644 million to supply the Government with mozzarella cheese.  Until further discovery is conducted, Plaintiff/Relator is unable to determine the precise amount of damages incurred by the United States as a result of Defendant's false claims concerning these contracts. The damages related to these false claims are subject to trebling under the False Claims Act.

Plaintiff/Relator will also seek statutory penalties for each instance in which Defendant either submitted a false claim or caused a false claim to be submitted to the United States as provided for in 31 U.S.C. § 3729, as adjusted by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

Plaintiff/Relator further states that he is entitled to recover those amounts provided for under 31 U.S.C. § 3730(d), including an appropriate share of any sums recovered and benefits obtained in this action, now or in the future, along with his reasonable expenses, attorney's fees and costs incurred in this action.

Defendant's Statement:  Leprino does not seek damages.

## 6.  REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a.  Date of Rule 26(f) meeting:

**September 18, 2018**

b.  Names of each participant and party he/she represented:

For the Plaintiff/Relator:  Michael Porter, Mitch Kreindler and Paul Enockson.

For the Defendant:  Michael Hofmann, Cliff Stricklin, Laura Perlov, David Ogden, Christopher Babbitt.

c.  Statement as to when Rule 26(a)(1) disclosures were made or will be made:

**September 1, 2017**

d.  Proposed changes, if any, in timing or requirement of disclosures under Fed.

R. Civ. P. 26(a)(1):

None.

e.  Statement concerning any agreements to conduct informal discovery:

The parties have no agreements regarding informal discovery.

f.  Statement concerning any other agreements or procedures to reduce

discovery and other litigation costs, including the use of a unified exhibit

numbering system:

The parties agree to use a unified exhibit numbering system for deposition

exhibits.

The parties agree that, in addition to written discovery requests and

responses which are to be exchanged by private e-mail or other non-paper

means pursuant to D.C.COLOLCivP 5.3(c), any other documents required to

be served but not filed with the Court will be exchanged by private email or

other non-paper means.

g.  Statement as to whether the parties anticipate that their claims or defense will

involve extensive electronically stored information, or that a substantial

amount of disclosure or discovery will involve information or records

maintained in electronic form.

Plaintiff/Relator's Statement:  The Plaintiff/Relator does not anticipate that he will have or need to produce significant electronically stored information. Plaintiff/Relator does anticipate that his discovery to Defendant will entail the production of significant electronically stored information by Defendant. Plaintiff/Relator has inquired about this subject with Defendant, and intends on having further conversations with Defendant to facilitate the production of such information in an economical and non-burdensome manner consistent with the discovery needs in this case.

Defendant's Statement:  Defendant anticipates electronically stored information to constitute the majority of discovery. Defendant will propose an ESI protocol for entry by the Court.

h.  Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties have explored the possibilities for promptly settling or resolving this case and do not believe that settlement is likely at this time. The parties remain open to further discussions.

## 7.  CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8.  DISCOVERY LIMITATIONS

a.  Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

Depositions:

Plaintiff/Relator's Proposal:  15 depositions per side, excluding experts

Defendant's Proposal:  10 depositions per side, excluding experts

Interrogatories:

25 interrogatories per side.

b.  Limitations which any party proposed on the length of depositions.

The parties do not propose changing the presumption length of
depositions of one day of 7 hours, as provided for in Fed. R. Civ. P. 30(d)(1).

c.  Limitations which any party proposes on the number of requests for
production and/or requests for admission.

Plaintiff/Relator's Proposal:

50 requests for production per side; and 50 requests for admission per
side

Defendant's Proposal:

25 requests for production per side; and 25 requests for admission per
side, not counting requests to admit the authenticity of documents.

d.  Other Planning or Discovery Orders

Plaintiff/Relator advises the Court that while the United States of America
is an interested party in this case, because it has declined to intervene, the
United States' position is that it is not a "party" for purposes of discovery in
this case.  As such, Plaintiff/Relator will need to comply with federal agency
*Touhy* regulations to obtain documents and testimony from the federal

agencies that likely have discoverable information.  Specifically,

Plaintiff/Relator will need to comply with 7 C.F.R. § 1.211 *et seq.* to obtain

documents and testimony from the United States Department of Agriculture,

and 45 C.F.R. § 2.1 *et seq.*  to obtain documents and testimony from the

Food and Drug Administration.  Discovery may reveal the need to obtain

documents and/or testimony from the federal agencies that purchased

cheese from Defendant, which will necessitate compliance with additional

agency-specific *Touhy* regulations. Plaintiff/Relator intends on proceeding

diligently to obtain such information, but the *Touhy* process takes time and, as

such, Plaintiff/Relator may require extensions of time relating to the case

schedule proposed herein and/or assistance from the Court by way of motion

asking the Court to order one or more government agencies to comply with

and/or produce documents and/or testimony necessary for Plaintiff/Relator to

move this case forward to trial.

The parties also anticipate the need for a protective order concerning

confidential and/or proprietary information that will need to be produced in this

case.  And given the likely volume of documents that will be produced, the

parties anticipate requesting a discovery order concerning inadvertent

production of documents consistent with Fed. R. Civ. P. 26(b)(5)(B) and Fed.

R. Evid. 502.

Leprino proposes that discovery be stayed until its motion to dismiss is decided.

Now that the plaintiff has abandoned his allegations that Leprino "concealed"

anything from the government, the motion to dismiss presents the straightforward issue of whether the plaintiff's regulatory interpretations are "indisputably correct." If they are not, nothing remains of this case. The Court can and should efficiently resolve that issue without requiring the parties to incur the burden and expense of discovery.If the Court declines to stay all discovery, Leprino proposes that discovery be staged. The first stage would involve discovery from the federal government on the issue of materiality. Under the "demanding" materiality standard announced in *Universal Health Servs. Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989 (2016),  the government's decision to repeatedly buy mozzarella from Leprino, after multiple inspections of Leprino's plants and even after the relator complained to his agency superiors, will probably dispose of this case.  After this discovery is taken, the parties would advise the Court as to whether additional discovery is needed and, if so, on what subjects.

Plaintiff/Relator objects to and does not agree with Defendant's proposal to stay discovery until its motion to dismiss is determined.  Such stays are viewed with disfavor in this District.  Plaintiff/Relator also objects to and does not agree with Defendant's proposal to stage discovery in this matter.  Facts that relate to the element of materiality also may relate to the elements of falsity and scienter.  As such, "staging" discovery will not lead to any efficiencies or reduce associated discovery costs in this case.

### 9.  CASE PLAN AND SCHEDULE

a.  Deadline for Joinder of Parties and Amendment of Pleadings:  **December 15, 2017**

b.  Discovery Cut-off:  **August 17, 2018**

c.  Dispositive Motion Deadline:  **October 5, 2018**

d.  Expert Witness Disclosure

1.  Identification of anticipated fields of expert testimony, if any.

Plaintiff/Relator anticipates the need for expert testimony in the following areas:  (1) cheese (manufacturing, processing and types); (2) Food and Drug Administration regulations; (3) food safety; (4) food processing engineer; and (5) economist.

Defendant anticipates the need for expert testimony in the following areas:  (1) the USDA's inspection regime; (2) standards of practice in the food industry; (3) food processing science; and (5) interactions with the FDA.

The parties are not precluded from endorsing experts in other fields, if required, based on the evidence and testimony produced during discovery.

2.  Limitations which the parties proposed on the use or number of expert witnesses.

No more than 5 per side.

3. The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **May 15, 2018**.

4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **June 16, 2018**.

e. Identification of Persons to Be Deposed:

Plaintiff Relator anticipates that the following persons will be deposed:

1. Representatives of Defendant, including Edith Wilkin (Food Safety/Regulatory Compliance) and Richard Barz (Quality Assurance/Research and Development);

2. Representatives of United States Department of Agricultural, Agricultural Marketing Service, including Noreen Ratzlaff, Ken Vorgert, Dana Coale, Diane Lewis, Rex Barnes, Luke Johnson, Ed Avalos and Jeff Wilson;

3. Representatives of the United States Department of Health and Human Services, Food and Drug Administration, including Felicia Billingslea, f/k/a Felicia Satchell;

4. Representatives of government agencies that entered into contracts with Defendant to purchase mozzarella or lite mozzarella cheese during the relevant time period at issue;

5. Defendant's experts; and

6.  Other persons as warranted by discovery.

Defendant anticipates that the following persons will be deposed (not

including Relator's experts):

| Person | Affiliation | Length |
|---|---|---|
| Carol D'Lima | FDA | Full day |
| Geraldine A. June | FDA | Half day |
| John Sheehan | FDA | Half day |
| John Simpson | Plaintiff | Full day |
| Duane Sponer | USDA | Half day |
| Kenneth Vorgert | USDA | Half day |
| Jeff Wilson | USDA | Half day |
| Philip S. Wolff | USDA | Full day |
| Rule 30(b)(6) designee, FDA | FDA | Full day |
| Rule 30(b)(6) designee, USDA | USDA | Full day |

f.  Deadline for Interrogatories:  **May 1, 2018**

g.  Deadline for Requests for Production of Documents and/or Admissions:  **May 1, 2018**

## 10. DATES FOR FURTHER CONFERENCES

a.  Status Conferences will be held in this case at the following dates and

times:_____.

b. A final pretrial conference with be held in this case on _____ at

o'clock ___m.  A Final Pretrial Order shall be prepared by the parties and

submitted to the court no later than seven (7) days before the final pretrial

conference.

## 11. OTHER SCHEDULING MATTERS

a. Discovery or scheduling issues, if any, on which counsel after a good faith

effort, were unable to reach an agreement.

 The parties were not able to reach agreement on the following:

- Number of depositions;

- Number of Requests for Production;

- Number of Requests for Admission; and

- Defendant's proposal to stay and/or stage discovery.

b. Anticipated length of trial and whether trial is to the court or jury.

The trial of this matter will be to a jury.  The parties anticipate that the trial

of this matter will take 10 days.

c. Pretrial proceedings, if any, that the parties believe may be more efficiently or

economically conducted in the District Court's facilities at 212 N. Wahsatch

Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S.

Courthouse/Federal Building, 402 Road Avenue, Grand Junction, Colorado

81501-2520; or the U.S. courthouse/Federal Building, 103 Sheppard Drive,

Durango, Colorado 81303-3439.

None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with

D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served

upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial

Procedures or Practice Standards established by the judicial officer presiding over the

trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR

7.1(a).

Counsel and unrepresented parties are reminded that any change of contact

information must be reported and filed with the Court pursuant to the applicable local

rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a motion showing

good cause.

DATED at Denver, Colorado, this _____ day of September, 2017.

BY THE COURT:

_____
The Honorable Nina J. Wang
United States Magistrate Judge

Respectfully submitted:

By:___/s/ Paul S. Enockson_____
      Paul S. Enockson
      2579 West Main Street, #201
      Littleton, CO  80120
      (303) 999-0134
      paul@enocksonlaw.com

Michael S. Porter
The Law Firm of Michael S. Porter
porterlaw@comcast.net

Mitch Kreindler
Kreindler & Associates
mkreindler@blowthewhistle.com

Sean Connelly
Zonies Law LLC
sconnelly@zonieslaw.com

Colette G. Matzzie
Taeva Shefler
Phillips & Cohen LLP
cmatzzie@phillipsandcohen.com
tshefler@pscf.com

**Attorneys for Plaintiff-Relator John
Simpson**

By:___/s/ Michael J. Hofmann_____
      Cliff Stricklin
      Michael J. Hofmann
      Laura S. Perlov
      Bryan Cave LLP
      1700 Lincoln Street, Suite 4100
      Denver, CO  80203-4541
      (303) 861-1700
      cliff.striklin@bryancave.com
      michael.hofmann@bryancave.com
      laura.perlov@bryancave.com

David W. Ogden
Carl J. Nichols
Christopher E. Babbitt
Wilmer Cutler Pickering Hale and Dorr
LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6681
david.ogden@wilmerhale.com
carl.nichols@wilmerhale.com
christopher.babbitt@wilmerhale.com

**Attorneys for Defendant Leprino Food
Dairy Products Company**