**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 16-cv-00268-CMA-NYW

UNITED STATES OF AMERICA *ex rel.*
JOHN SIMPSON,

      Plaintiffs,

v.

LEPRINO FOODS DAIRY PRODUCTS COMPANY, a Colorado corporation,

      Defendant.

---

**ORDER AFFIRMING IN PART AND ADOPTING IN PART THE RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE NINA Y. WANG**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Nina Y. Wang (Doc. # 70), wherein she recommends that this Court grant Defendant Leprino Foods Dairy Products Company's Motion to Dismiss Plaintiff John Simpson's Complaint (Doc. # 28).  Both parties timely filed objections to the Recommendation, essentially challenging it in its entirety.[1]  (Doc. ## 72, 73.)  The Court must therefore review the issues de novo and, in so doing, "may accept, reject, or modify the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(3).  Having conducted the

---

[1] The only portion of the Recommendation that was not objected to is Magistrate Judge Wang's conclusion that the False Claims Act's six-year statute of limitations limits liability in this case to frauds occurring after February 2, 2010.  Because (1) Plaintiff concedes this point and (2) the Court is dismissing the Complaint with prejudice, the Court need not address this issue.

required de novo review, the Court concludes that dismissal of the Complaint with prejudice is appropriate.

## I.  BACKGROUND

Magistrate Judge Wang's Recommendation provides an extensive recitation of the factual and procedural background in this case.  The Recommendation is incorporated herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Thus, the factual background of this dispute will be repeated only to the extent necessary to address the parties' objections.

Defendant Leprino Foods Dairy Products Family (Leprino) sells cheese to the United States through two component agencies of the United States Department of Agriculture (USDA).  (Doc. # 1 at ¶ 8.)  Since 2004, the Government has awarded contracts in excess of $644 million to Leprino to purchase lite and low-moisture part-skim mozzarella cheese.  (*Id.* at ¶ 19.)  To qualify as mozzarella cheese, the cheese must originate from dairy plants that have been surveyed and awarded the USDA's "C17" plant code.  (*Id.* at ¶¶ 11, 56–57.)  The USDA's C17 code is only appropriate when the dairy plant at issue produces mozzarella cheese that strictly conforms to the Food and Drug Administration's (FDA) standard of identity for mozzarella and other regulatory requirements for production of mozzarella cheese.  (*Id.* at ¶ 60.)

Mr. Simpson is a Field Inspector with the Dairy Plant Survey Program within the USDA.  (*Id.* at ¶ 23.)  In the course of his employment, Mr. Simpson inspected Leprino's dairy plant in Greeley, Colorado and determined, starting in 2013, that the cheese produced there did not comply with the FDA's standard of identity regulations for

mozzarella cheese.  (*Id.* at ¶ 25.)  Mr. Simpson specifically contends that Leprino adds, into its molten cheese, sodium hexametaphosphate (sodium hex), which is not one of the six ingredients that may be used to make mozzarella cheese under FDA standards. (*Id.* at ¶¶ 18-19.)  Another field inspector with the USDA reported similar concerns related to Leprino's plants in Tracy, California and Fort Morgan, Colorado in late 2014. (*Id.* at ¶ 94; Doc. # 28-1.)  The USDA later communicated these concerns to Leprino. (Doc. # 1-7.)  Mr. Simpson avers that Leprino's processes and ingredients are still non-compliant with FDA regulations.

In February 2016, Mr. Simpson commenced this lawsuit against Leprino, bringing one count under the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A)–(B).  (Doc. # 1 at ¶¶ 110–115.)  He primarily alleges that, since 2004, Leprino has fraudulently concealed from the Government that (1) its production methods and ingredients disqualify it from being designated "approved" under the FDA for sale to and use in Government programs; and (2) its mozzarella cheese does not meet the FDA's standard of identity regulations.  (*Id.* at ¶ 71.)  In April 2017, the Government declined to intervene in this action.  (Doc. # 11.)

In July 2017, Leprino moved for dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).  (Doc. # 28.)  Mr. Simpson opposed dismissal (Doc. # 40); and Magistrate Judge Wang heard oral argument on the motion (Doc. # 58).  After thoroughly considering the parties' arguments and applicable law, Magistrate Wong recommended that Mr. Simpson's Complaint be dismissed for failure

to adequately plead the FCA claim under Federal Rule of Civil Procedure 9(b).  Upon de novo review, this Court agrees.

## II.   REQUIREMENTS FOR PLEADING FRAUD

Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006).  Following the "straightforward language" of Rule 9(b), the Tenth Circuit has held that "Rule 9(b) requires only the identification of the circumstances constituting fraud, and that it does not require any particularity in connection with an averment of intent, knowledge or condition of mind."  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (citing *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986)).

Although Rule 9(b) permits intent, knowledge, or condition of mind to be averred generally, courts have repeatedly required plaintiffs to plead the circumstances constituting fraud and the factual basis that gives rise to a strong inference of fraudulent intent.  *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 776 (2nd Cir. 1991).  "[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this 'must not be taken for license to base claims of fraud on speculation and conclusory allegations.'"  *In re United Telecommunications, Inc., Sec. Litig.*, 781 F. Supp. 696, 702 (D. Kan. 1991) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

Rule 9(b) must also be read in conjunction with Rule 8 which calls for pleadings to be "simple, concise, and direct, ... and to be construed as to do substantial justice." *See Schwartz*, 124 F.3d at 1252; *see also Seattle–First*, 800 F.2d at 1011. But even under a liberal application of Rule 8, plaintiffs must still provide some factual support for the conclusions of fraudulent intent. *Seattle–First Nat'l Bank*, 800 F.2d at 1011; *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991); *Turner & Boisseau, Chtd. v. Marshall Adj. Co.*, 1989 WL 18812, at *2 (D. Kan. 1989) ("Knowledge and intent may be averred generally as long as the complaint provides a sufficient factual basis to support an inference of knowledge and intent."). Simply stated, Rule 9(b) requires plaintiff to set forth "the circumstances constituting fraud or mistake," including "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Seattle–First Nat'l Bank*, 800 F.2d at 1011–12; *Schwartz*, 124 F.3d at 1252 (citations omitted).

If a complaint fails to satisfy these pleading requirements, Rule 12(b)(6) provides that a defendant may move for dismissal. Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations ... and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III.    ANALYSIS

A FCA violation occurs when a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1)(A).  Simply put, a violation includes four elements: falsity, causation, knowledge, and materiality.  *Universal Health Servs., Inc. v. United States ex rel. Escobar*, —— U.S. ——, 136 S.Ct. 1989, 1996 (2016) (materiality); *U.S. ex rel. Sikkenga*, 472 F.3d at 714 (falsity, causation, knowledge).  As pertinent here, a claim is "knowingly false" only if the defendant "has actual knowledge of the information, acts in deliberate ignorance of the truth or falsity of the information, or acts in reckless disregard of the truth or falsity of the information."  *Escobar*, 136 S.Ct. at 1996 (internal quotations omitted); *see also* 31 U.S.C. § 3729(b)(1)(A).

Magistrate Judge Wang recommended dismissal of Mr. Simpson's Complaint based on her finding that he failed to adequately plead scienter.  Having conducted a thorough de novo review of the issue, the Court agrees that dismissal is appropriate.

As mentioned, Mr. Simpson contends that Leprino submitted to the Government false claims for payment for the sale of mozzarella cheese knowing that its processes and ingredients were non-compliant and that its cheese did not meet the FDA's standard of identity regulations.  With respect to Leprino's knowledge of falsity, Mr. Simpson's Complaint states:

- "Leprino knowingly mislabels its cheese to induce Government purchases under USDA procurement requirements."  (Doc. # 1 at ¶ 20.)

- "As part of [a] fraudulent scheme, Leprino has knowingly submitted false or fraudulent claims for payment for the sale of mozzarella cheese to the Government knowing that the cheese it has sold to the Government does not meet USDA commodity specifications for mozzarella cheese and lite mozzarella cheese."  (*Id.* at ¶ 22.)

- "For more than ten years, Leprino has knowingly sold to the Government a food product that does not meet USDA commodity specifications for mozzarella cheese or lite mozzarella cheese."  (*Id.* at ¶ 70.)

- "Since 2004, Leprino has known that adding sodium [hex] directly to the molten cheese during production made its dairy plaint ineligible for approval for sale of mozzarella cheese (designation of C17) and violated the FDA standard of identity regulations for mozzarella cheese."  (*Id.* at ¶ 72.)

- "Leprino fraudulently induced the Government into the contracts by falsely certifying their products would comply with specifications, knowing they did not."  (*Id.* at ¶ 107.)

These allegations are conclusory and speculative, and they are not accompanied by a sufficient explanation of the circumstances constituting a fraud to support an inference of the requisite scienter, as required under Rule 9(b).  *See Shields v. moskeag Bank Shares, Inc.*, 766 F.Supp. 32, 38 (D.N.H. 1991) ("Allegations in the form of mere conclusions, accusations, or speculation are not sufficient to meet Rule 9(b)'s peculiarity requirement without supporting facts surrounding the scheme to defraud or a basis for believing such a scheme existed."); *In re First Chicago Corp. Sec Litig.*, 769

F.Supp. 1444, 1454 (N. D. Ill. 1991) ("Conclusory allegations that the defendants knew that their statements were not true or recklessly disregarded whether the statements were true will not satisfy [R]ule 9(b).").

Mr. Simpson contends that his scienter allegations are sufficient when read "in context with the remainder of the complaint," wherein he details Leprino's correspondence with the government with respect to this issue.  (Doc. # 72 at 6.)  Mr. Simpson proffers that this correspondence demonstrates the circumstances of Leprino's fraud—namely that, since 2004, Leprino has been aware that its cheese production process is non-compliant yet has falsely certified to the Government otherwise to effectuate cheese sales.  The Complaint specifically references three main pieces of correspondence.

First, the Complaint highlights a letter dated April 6, 2004, wherein the FDA advised Leprino that the FDA's regulatory provisions "do not permit the direct addition of sodium [hex] to mozzarella cheese."  (Doc. # 41-1.)  The letter demonstrates that Leprino had engaged in open communication with the FDA since at least 2003 about its use of sodium hex as a processing aid in its mozzarella cheese production and requested guidance regarding its ability to do so.  (*Id.*)  The letter informs Leprino that it may incorporate sodium hex "into salt prior to the addition of salt to mozzarella cheese" but that it may not directly add sodium hex to the cheese without first combining it with salt.  (*Id.*)  The letter concludes that the FDA "would not object to Leprino's use of sodium [hex] if, all the other [present] conditions . . . remain[ed] the same, [and]

Leprino's processes were altered to comply with [the FDA's standards of identity]." (Doc. # 41-1.)

More than a decade later and subsequent to numerous FDA and USDA approvals, in an October 20, 2014 memorandum, a field inspector with the FDA noted that he observed Leprino putting sodium hex combined "with a small amount of salt" into its molten mozzarella cheese, followed by the addition of more salt into the cheese. (Doc. # 28-1.) Mr. Simpson avers that he made similar observations when inspecting a Leprino plant in Greeley, Colorado. (Doc. # 1 at ¶¶ 84–93.) Based on these observations, on April 7, 2015, the USDA expressed concerns about "what appeared to be the direct addition of sodium [hex] to the curd mass," which is prohibited by the FDA. (Doc. # 1-7.) The USDA also noted that it would remove the Leprino's C17 status beginning in May 2015 unless it (1) discontinued labeling its cheese as mozzarella; (2) discontinued the use of sodium hex as currently used; or (3) detailed and implemented a method of sodium hex addition that would demonstrate compliance to FDA's 2004 letter. (*Id.* at 3.) Despite this warning, the USDA did not remove Leprino's C17 status but instead executed purchasing agreements with Leprino for mozzarella cheese in September and October 2015.

Although this correspondence certainly shows that Leprino had been aware, since 2004, of the prohibition against adding pure sodium hex directly into its cheese, the correspondence does not state, much less demonstrate, that Leprino had knowledge that its method of combining salt and sodium hex and then injecting it into the cheese was likewise prohibited. Indeed, the 2004 letter expressly states otherwise,

and there are no allegations in the Complaint to suggest that Leprino had received additional correspondence explaining that the FDA had changed its position on that process. Absent *any* allegations supporting an inference that Leprino had actual knowledge, acted in deliberate ignorance toward, or behaved in reckless disregard of the fact that its process of combining salt and sodium hex—as was observed by the USDA field inspectors in 2013–2014 and discussed in the 2015 USDA letter—violated the regulations as articulated by the FDA in 2004, the Complaint does not detail any circumstances supporting fraudulent intent.

Moreover, the Complaint is likewise devoid of any allegations as to occasions on which Leprino made knowingly false statements. *See Seattle–First*, 800 F.2d at 1011 ("Rule 9(b) requires at least a designation of the occasions on which affirmative statements were allegedly made."). In contrast, upon reviewing the submitted correspondence, it appears that Leprino has consistently informed the USDA and FDA that it has been adding salt to its sodium hex before injecting it into the cheese and that it believed that process to be compliant with the FDA's standard of identity regulations. Mr. Simpson's single and conclusory allegation that "starting in 2004 Leprino misrepresented to [the USDA] that [the] FDA had approved the addition of sodium [hex] directly into molten cheese" is insufficient to overcome dismissal under Rule 9(b).

Because the Complaint lacks sufficient allegations, taken as true, to support that Leprino knowingly perpetrated a falsehood, dismissal is appropriate. In reaching this conclusion, the Court is not opining that Leprino's process of adding salt to sodium hex is, indeed, a process that is compliant with FDA regulations; the Court is merely

concluding that the Complaint insufficiently alleges that Leprino knew, acted in deliberate ignorance toward, or behaved in reckless disregard of the fact that it was using a process or combination of ingredients that were in violation of FDA standards.

The Court must next determine whether dismissal of the Complaint with or without prejudice is appropriate in this case. Magistrate Judge Wang recommended that the Complaint be dismissed without prejudice. This Court, however, concludes that dismissal with prejudice is more appropriate.

Dismissal under Rule 12(b)(6) without affording the plaintiff an opportunity to amend is proper only "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Such is the case here. Considering the FDA's 2004 letter to Leprino suggesting that combining salt into sodium hex was permissible and Leprino's subsequent transparency about its cheese-making process, wherein it combined salt and sodium hex, it appears to this Court that Mr. Simpson cannot present any facts demonstrating that Leprino knowingly defrauded the FDA.[2] *See McNally v. United States*, 483 U.S. 350, 358 (1987) (statements of claims

_____

[2] The Court recognizes the possibility that all combinations of salt and sodium hex are not equally permissible under the FDA regulations. The Court indeed acknowledges (1) the possibility that combining a negligible amount of salt to sodium hex could essentially equate to adding pure sodium hex and (2) the distinction, as discussed by the parties and in Magistrate Judge's Recommendation, between adding sodium hex to salt and adding salt to sodium hex. However, even assuming that the latter approach, which appears to be used by Leprino, is non-compliant with the applicable regulations, mere use of that process does not mean that Leprino was aware of the non-compliance and knowingly misrepresented it to the FDA or the USDA to obtain approval or make a sale. *See U.S. ex rel. Roby v. Boeing Co.*, 100 F. Supp. 2d 619, 626 (S.D. Ohio 2000), aff'd, 302 F.3d 637 (6th Cir. 2002) ("An untrue statement, however, is not sufficient by itself to warrant liability under the FCA, the Act also requires a showing of knowing fraud . . . . Courts therefore consistently recognize that innocent mistakes or negligence are not

which are false within the meaning of the FCA must be more than objectively untrue, they must betray or suggest intentional deceit).  Indeed, neither in Mr. Simpson's response to Leprino's motion to dismiss nor in his pleadings that followed the Recommendation, does he present or allege that he can present any allegations to support that Leprino either knew that its process of combining salt and sodium hex was non-compliant or that it falsely represented that process to obtain approval or finalize a sale.  Even Mr. Simpson's request to amend the Complaint, which he improperly makes in a footnote to his objection to the Recommendation, does not specify what additional fraudulent circumstances he intends to elucidate.  *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1118–19 (10th Cir. 2015) ("The district court did not abuse its discretion in dismissing the complaint with prejudice where plaintiff's memorandum contained only one sentence at the very end of his brief alternatively requesting leave to amend in the event the district court should decide to dismiss his complaint."); D.C.COLO.LCivR 7.1 ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."); D.C.COLO.LCivR 15.1 (requiring a motion for leave to amend to include a copy of the proposed amended pleading).

The Court accordingly finds that allowing Mr. Simpson the opportunity to amend the Complaint would be futile, and therefore dismissal of the Complaint with prejudice is warranted.[3]

---

actionable under the FCA. Nor does the mere presence of a defect create liability under the Act.") (internal citations and quotations omitted).

[3] Based on this dispositive conclusion, the Court need not address the parties' remaining objections to the Recommendation.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court:

(1) AFFIRMS IN PART and ADOPTS IN PART the Recommendation of United States Magistrate Judge Nina Y. Wang (Doc. # 70);

(2) GRANTS Defendant Leprino Foods Dairy Products Company's Motion to Dismiss (Doc. # 28);

(3) DISMISSES Plaintiff's Complaint WITH PREJUDICE (Doc # 1).

DATED: March 19, 2018            BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge